1

2

3

4

5

6

7

8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  LARRY NICKERSON,                          ) Case No.: 1:10-cv-01315 JLT
                                             )
12                                           ) ORDER ON PLAINTIFF'S SOCIAL
                    Plaintiff,               ) SECURITY APPEAL
13                                           )
        v.                                   ) (Doc. 13)
14                                           )
                                             ) ORDER DIRECTING REMAND PURSUANT
15  MICHAEL J. ASTRUE,                       ) TO SENTENCE FOUR OF 42 U.S.C. § 405(g)
    Commissioner of Social Security,         )
16                                           ) ORDER DIRECTING ENTRY OF JUDGMENT
                                             ) IN FAVOR OF PLAINTIFF LARRY
17                  Defendant.               ) NICKERSON AND AGAINST DEFENDANT
    _____ ) MICHAEL J. ASTRUE, COMMISSIONEr
18

19

20
    Larry Don Nickerson ("Plaintiff") asserts he is entitled to disability insurance benefits and
21
    supplemental security income under the Social Security Act.  Plaintiff argues the administrative law
22
    judge ("ALJ") failed to develop the record and erred in assessing his credibility and the opinions of
23
    his treating physicians.  Thus, Plaintiff seeks judicial review of the administrative decision denying
24
    his benefits.  For the reasons set forth below, the Court remands this matter for further proceedings.
25
                              **PROCEDURAL HISTORY**[1]
26

27

28
    _____

    [1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

                                             1

1    Plaintiff filed applications for disability insurance benefits and supplemental security income

2    on September 4, 2007, alleging disability beginning June 1, 2005.  AR at 149-58.  The Social

3    Security Administration denied his claims initially on October 8, 2007, and upon reconsideration

4    denied the claims on December 6, 2007.  *Id.* at 43-44, 69-72.  After requesting a hearing, Plaintiff

5    testified before an ALJ on February 22, 2010.  *Id.* at 20.

6    The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an

7    order denying benefits on March 12, 2010.  AR at 11-18.  Plaintiff requested a review by the Appeals

8    Council of Social Security on the ALJ's decision, which was denied on June 22, 2010.  *Id.* at 1-4.

9    Therefore, the ALJ's determination became the decision of the Commissioner of Social Security

10   ("Commissioner").

11                                    **STANDARD OF REVIEW**

12   District courts have a limited scope of judicial review for disability claims after a decision by

13   the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

14   such as whether a claimant was disabled, the Court must determine whether the Commissioner's

15   decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

16   ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

17   standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y*

18   *of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

19   Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

20   reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S.

21   389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938).  The record as a whole

22   must be considered, because "[t]he court must consider both evidence that supports and evidence

23   that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

24                                     **DISABILITY BENEFITS**

25   To qualify for benefits under Titles II and XVI of the Social Security Act, Plaintiff must

26   establish he is unable to engage in substantial gainful activity due to a medically determinable

27   physical or mental impairment that has lasted or can be expected to last for a continuous period of

28

                                                    2

not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (1994). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity[2] during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony.  20 C.F.R. §§ 416.927, 416.929.

## A.  Relevant Medical Evidence

On October 1, 2007, Plaintiff was treated by Dr. Terry Kilgore.  AR at 229- 34.  Plaintiff said he had not seen a doctor since he moved to Texas about three months prior to his examination by Dr. Kilgore.  *Id.* at 229.  Plaintiff reported his health deteriorated in 2001, as noted by Dr. Kilgore:

> At that time he was traveling 165 mph on a motorcycle and had an accident.  He had a severe injury to his right ankle as well as right knee.  The patient has had five surgeries on his right ankle, which ultimately resulted in a fusion to the ankle in 2003. . . He also

---

[2] Substantial gainful activity is defined as "work that–(a) Involves doing significant and productive physical or mental duties; and (b) Is done (or intended) for pay or profit."  20 C.F.R. §§ 404.1510, 416.910.

had an injury to his right knee.  The patient stated that in 2003 he had an ACL/MCL and cartilage repair to the knee.

*Id.*  As a result of the accident, Plaintiff complained of having pain in his ankle, and his ankle would swell and hurt after he walked about a quarter of a mile.  *Id.*  Likewise, Plaintiff said his right knee "hurts and swells intermittently."  *Id.*  On examination, Dr. Kilgore observed Plaintiff walked "with a moderate limp to the right leg," and his gait was "slightly slow."  *Id.* at 230.  Plaintiff did not require a cane, crutch, or wheelchair to ambulate.  *Id.*  In his right ankle, Plaintiff "had no mobility," but his left ankle was normal.  *Id.* at 231.  Flexion in both knees was 120 degrees, though with tenderness in the right knee.  *Id.* at 232.  Plaintiff had decreased sensation below his right knee, and "[h]eel walking and toe walking were weak bilaterally."  *Id.* at 231.

Dr. Terry Collier completed physical residual functional capacity assessment on October 11, 2007.  AR at 238-45.  Dr. Collier opined Plaintiff could frequently lift and carry less than 10 pounds, but occasionally lift and carry 10 pounds.  *Id.* at 236.  Plaintiff could stand and walk at least two hours and sit about six hours in an eight-hour day.  *Id.*  His ability to push and pull, including the operation of hand and foot controls was unlimited.  *Id.*  Dr. Collier determined Plaintiff could occasionally kneel; crouch; craw; and climb ramps, stairs, ladders, ropes and scaffolds.  *Id.* at 240.  In addition, Plaintiff could frequently balance and stoop.  *Id.*  Dr. Collier did not find Plaintiff had manipulative, visual, or environmental limitations.  *Id.* at 241-42.  Dr. Collier believed "the alleged severity of limitations is not fully supported by the [evidence of record] in [the] file."  *Id.* at 243.

Plaintiff was treated at Holy Cross Clinic from April through December 2009.  Dr. Michael Habibe Plaintiff reported he began to have difficulty sleeping beginning in April 2009.  AR at 264. Treatment notes from Holy Cross Clinic indicate Plaintiff was diagnosed with "mental illness—depression" on May 22, 2009.  *Id.* at 266.  His depression continued and in July 2009, Plaintiff used a walker to ambulate.  *Id.* at 264.

Also, Plaintiff received treatment from physicians at Clinica Sierra Vista.  On June 10, 2009, treatment notes indicate Plaintiff had "some instability" in his right knee and "limited dorsiflexion [and] plantarflexion" in his right ankle.  AR at 260.  Plaintiff began to take Celebrex, which helped him to work more.  *Id.* at 260-61. On August 9, 2009, Plaintiff was given a prescription for a new

4

1   cane after he reported "somebody pushed him down [and] he lost his cane." *Id.* at 256. Further, on

2   August 24, 2009, Dr. Sudeshna Kundu prescribed a right knee brace for Plaintiff. *Id.* at 255. On

3   October 6, 2009, Plaintiff reported nightmares and was "scared to go out" because he felt "people

4   may hurt him." *Id.* at 253. Plaintiff complained he was depressed and wanted to see a psychiatrist.

5   *Id.* The treatment notes indicate Plaintiff was "educated" regarding the use of his brace and cane,

6   and their protection of his joint. *Id.* In November 2009, Dr. Aury Holtzman noted Plaintiff walked

7   with the assistance of a cane, which continued in January 2010. *Id.* at 250-51, 268. Dr. Holtzman

8   prescribed a hospital bed for Plaintiff on February 9, 2010. *Id.* at 280.

9       On November 9, 2009, Dr. Sarah Morgan performed a mental status exam on Plaintiff. AR

10  at 290-92. Plaintiff complained of insomnia and decreased self-esteem, energy, and concentration.

11  *Id.* at 290. Plaintiff reported that he lived in an apartment from a homeless program. *Id.* at 291. Dr.

12  Morgan observed Plaintiff had a dysphoric, depressed mood, but was oriented to person, place, time,

13  and situation. *Id.* Dr. Morgan found Plaintiff's memory and thought process were intact, and he had

14  "good" concentration, judgment, insight, and impulse control. *Id.* Dr. Morgan diagnosed Plaintiff

15  with a recurrent social phobia, and determined Plaintiff had a GAF score of 50.[3] *Id.* On November

16  18, 2009, Plaintiff reported he did not have side effects from his medication, and was "sleeping

17  better, but still not sleeping through the night." AR at 289. Plaintiff stated he stayed inside is house

18  because he was afraid someone would "get him." *Id.* Dr. Morgan found Plaintiff's concentration

19  and insight were fair, and Plaintiff appeared anxious. *Id.*

20      During visits with Dr. Morgan and Dr. Alexia Baca, Plaintiff complained of insomnia and

21  feelings of restlessness. AR at 283-85. Plaintiff harbored "feelings of anger and betrayal" toward

22  his sister, who sold Plaintiff's home while he was incarcerated, resulting in Plaintiff being homeless.

23  *Id.* at 285. Dr. Baca found Plaintiff's memory and thought process were intact, and his concentration

24  and insight was between "fair" and "good." *Id.* at 283, 285. On February 19, 2010, Dr. Baca noted,

25

26          [3] Global Assessment of Functioning ("GAF") scores range from 1-100, and in calculating a GAF score, the doctor
    considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."
27  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV"). A GAF
    score between 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)
28  OR any serious impairments in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

1   "[Plaintiff] is upset because his sleep patterns are disrupted and he has been getting limited sleep.

2   He worked through issues concerning his anxiety and how it impacted his life." AR at 281.  In

3   addition, Dr. Baca found Plaintiff's concentration was good and his insight was fair.  She gave

4   Plaintiff a GAF score of 65.[4]  *Id.*

5        Dr. Holtzman completed a "medical source statement of ability to do work-related activities"

6   on February 15, 2010. AR at 269-74.  Dr. Holtzman opined Plaintiff could occasionally lift, but

7   never carry, up 10 pounds.  *Id.* at 269.  Dr. Holtzman believed Plaintiff could sit for fifteen minutes,

8   stand for five minutes, and walk for five minutes without interruption; in an eight-hour workday,

9   Plaintiff could sit for an hour and stand or walk for thirty minutes each.  *Id.* at 270.  Dr. Holtzman

10  based these opinions on a physical exam, and noted Plaintiff had a large, rigid brace "from foot

11  supporting ankle to lower leg, knee" and "walks with crutches or cane."  *Id.*  He believed Plaintiff's

12  use of a cane was "medically necessary" and Plaintiff required it to ambulate.  *Id.*  Dr. Holtzman

13  stated Plaintiff could never reach, handle objects, or push and pull with his right hand, but could

14  occasionally reach, finger, and feel.  *Id.* at 271.  With his left hand, Plaintiff could never push and

15  pull, but could occasionally perform the other activities.  *Id.*  Dr. Holtzman found Plaintiff could

16  never operate foot controls with his right foot, but could occasionally do so with his left.  *Id.*  Dr.

17  Holtzman stated Plaintiff had the following postural limitations:  he could occasionally balance, but

18  never climb, stoop, kneel, crouch, or crawl.  *Id.* at 272.  With regard to environmental limitations,

19  Plaintiff could never be exposed to unprotected heights, moving mechanical parts, operation of a

20  vehicle, or the extreme cold.  *Id.* at 273.

21       On February 19, 2010, Dr. Baca completed a medical source statement concerning the nature

22  and severity of Plaintiff's mental impairment.  AR at 275-78.  She opined Plaintiff was moderately

23  limited in the ability to understand and remember very short, simple instructions and work-like

24  procedures.  *Id.* at 276.  Plaintiff was markedly limited in his ability to understand and remember

25  detailed instructions; to carry out detailed instructions; maintain attention and concentration for

26  _____

27       [4] A GAF score between 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some
difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful

28  interpersonal relationships." *DSM-IV* at 34.

extended periods; to perform activities within a schedule, maintain attendance, and be punctual; to complete a normal workday and workweek; to ask simple questions or request assistance; and to accept instructions and respond appropriately to criticism from supervisors. *Id.* Also, Dr. Baca opined Plaintiff was markedly limited in all areas of adaption, such as responding appropriately to changes in the work setting and setting realistic goals. *Id.* at 277. Dr. Baca opined the onset date of Plaintiff's limitations was December 2, 2009. *Id.*

**B.  Hearing Testimony**

On February 22, 2010, Plaintiff testified at the hearing before the ALJ, at which time Plaintiff was forty-eight years old. AR at 21, 24. Plaintiff said he attended Gracin Junior College and studied industrial maintenance, but Plaintiff did not receive a degree. *Id.* at 24. Plaintiff reported he had an accident on a "pro stock drag bike," in 2001, which "tore [his] ankle completely off" and what was left "was hanging with the skin." *Id.* at 27. Also, Plaintiff said he tore his "MCL, ACL, and the cartilage" in his knee. *Id.* As a result his ankle injury, Plaintiff said he had five surgeries. *Id.*

Plaintiff said he tried to work after the accident, but was unable to do so. AR at 27. Plaintiff stated he last worked for about three weeks in 2008 for Upchurch Plumbing, where he ran a machine maintenance crew. *Id.* at 24-25. However, Plaintiff said, "they said they had to let me go because I couldn't stand too long, and I was having problems." *Id.* Prior to that, Plaintiff worked for Phillips Window Company for about "two and a half to three weeks," in 2007, doing mechanical and electrical machine maintenance. *Id.* at 25. Plaintiff said he had done "[n]othing but maintenance for 22 years" and he "prefer[red] working because [he] made a lot of money." *Id.* at 26-27.

According to Plaintiff, the amount of weight a worker is required to lift doing machine maintenance varied by the job: "You . . . might have to lift a, a 50-pound grill box, you might have to lift a 50-pound motor, or it could be heavier." AR at 26. In addition, Plaintiff said tool pouches, which he could have to tote "around eight to ten hours a day," weighed about 35 pounds. *Id.* Machine maintenance work required "standing and walking about 90 -- 95 percent of the day." *Id.* Plaintiff said he had to squat, kneel, and bend, as well as occasionally climb ladders depending on the work performed. *Id.*

7

Plaintiff testified he had a gastric bypass surgery in 2003 because he was told it would help his knee and ankle. AR at 27. However, Plaintiff said the surgery did not help, and his pain worsened each year. *Id.* At the hearing, Plaintiff wore a brace on his right leg, which Plaintiff said he had done for two years because his ankle was "crooked" after the surgeries. *Id.* at 29. In addition, Plaintiff stated he had used a cane "100 percent of the time" since 2007 because he would fall without the cane. *Id.* Plaintiff said a specialist told him to stop using the cane and to use crutches "until they can try to get an MRI," but Plaintiff was unable to keep his balance when using the crutches. *Id.* at 30. Further, Plaintiff said the specialist gave him a prescription for a hospital bed because he needed more support than pillows offered and he had to elevate his leg "at least 80 percent of the time" during the day to prevent swelling in his ankle and knee. *Id.* at 30-31.

Plaintiff reported the pain prevented him from sleeping, and made it difficult for him to think: "I can't sleep. I can't even think sometime[s]. I go so many days without sleep . . . I get ready [to] go do something, I forget what I was doing." AR at 32. Plaintiff was given Vicodin to treat the pain and swelling, but Plaintiff said it did not alleviate the pain. *Id.* According to Plaintiff, he "started drinking real bad to kill the pain," but that did "nothing," so he quit drinking four months before the hearing. *Id.*

On an average day, Plaintiff said he would "[s]it . . . in bed, lay down in bed, [and] watch TV. That's it." AR at 33. He said he did not have activities outside his home, and was unable to drive. *Id.* Plaintiff reported sometimes he went shopping with his neighbor and used the scooters in the stores, but other times his neighbor shopped for Plaintiff. *Id.* In addition, Plaintiff said he was able to "cook some, but not [a] full meal." *Id.* Plaintiff said he was unable to vacuum, sweep, or mop; a woman he dated came over and would clean for him. *Id.* Plaintiff did not believe he could stand more than a few minutes in an eight-hour day because he had to keep his balance and would not put weight on his leg. *Id.* at 34. On a good day, Plaintiff estimated he could walk about thirty yards with his cane, which he would do to check his mail. *Id.* at 34-35. Plaintiff stated he gained 85 pounds in 2009 because of his limited activities. *Id.* at 31, 36. Also, Plaintiff reported he would "throw up for no reason" and took plastic bags with him to stores in case he had to vomit. *Id.* at 28.

1    Plaintiff said because it was difficult for him to keep his balance, he was unable to lift

2    anything.  AR at 35.  Plaintiff said he could lift a gallon of milk with his left hand, but it would

3    throw his balance off and he had to watch his steps.  *Id.*  Plaintiff reported that he fell about once a

4    month.  *Id.* at 29.

5    In addition to the injuries to his knee and ankle, Plaintiff reported Dr. Baca and Dr. Morgan

6    treated him for depression at Clinica Sierra Vista.  AR Supp. at 1[5].  Plaintiff said he had taken Prozac

7    and Zoloft for his depression, and was currently taking Seroquel.  *Id.*  Plaintiff did not believe the

8    medication helped, because it was supposed to put him to sleep, but he was still unable to sleep.  *Id.*

9    According to Plaintiff, he went two to three days without sleep sometimes due to the pain, which

10   affected his ability to think.  *Id.* at 33; AR Supp. at 1.  Plaintiff believed the medication caused him

11   to have "[r]eal bad nightmares."  *Id.* at 36.

12   Vocational expert ("VE") Thomas Dachelet testified after Plaintiff at the hearing.  AR at 37.

13   The VE explained Plaintiff's past relevant work was defined in the *Dictionary of Occupational*

14   *Titles*[6] ("DOT") as "a maintenance mechanic, a medium, SVP seven, skilled," but "as performed" by

15   Plaintiff, the work was "very heavy."  AR at 38.  The ALJ and Plaintiff's counsel then posed

16   hypothetical questions to the VE regarding whether work would be available to individuals with

17   various limitations.

18   First, the ALJ asked the VE to consider an individual "48 years of age, with a twelfth grade

19   education and past relevant work experience [as] just described."  AR at 38.  The individual could

20   lift and carry 10 pounds occasionally and up to 10 pounds frequently; stand and walk two hours

21   each; sit for six hours; and occasionally climb, kneel, crouch, and crawl.  *Id.*  The VE opined such an

22   individual could not perform Plaintiff's past work, but "the full world of sedentary, unskilled" work

23   was open.  *Id.*  As examples of positions, the VE identified positions including an ampoule sealer,

24

25   [5] Page 13 of Plaintiff's testimony was not included in the original administrative record, but was placed in a

26   supplement, to which the Court will refer as "AR Supp."

27   [6] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training
     Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy.  *Terry v.*

28   *Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The *DOT* classifies jobs by their exertional and skill requirements, and may
     be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).

1   DOT 559.687-014; loader of semiconductor dyes, DOT 726.687-030; and weight tester, DOT

2   539.485-010.  *Id.* at 38-39.

3        If the above individual needed a cane "for balancing or standing and walking," the VE said

4   the limitation would not impact the worker's ability to do the jobs provided, but it would limit the

5   number of jobs "theoretically available."  AR at 39-40.  The VE added, "Having said that, the caveat

6   is that – if we're looking at the real world for an eight-hour day, that world of work is then no longer

7   available because they're . . . essentially nonproductive for two of eight [hours], which is not

8   acceptable."  *Id.* at 40.

9        Next, the VE considered an individual with the same age, education, and work experience,

10  who could lift and carry eight pounds.  AR at 39.  The individual could "stand less than one hour,

11  walk approximately 30 yards, and sit 30 minutes total," but required the use of a cane to assist with

12  walking and was required to "elevate the right lower extremity daily six to seven hours."  *Id.*  Also,

13  concentration was difficult due to pain.  *Id.*  The VE opined such an individual would not be able to

14  perform Plaintiff's past work, nor any other work in the national economy.  *Id.*

15       Plaintiff's counsel asked the VE to consider an individual who could occasionally lift 10

16  pounds but never carry it, sit for one hour, and stand and walk thirty minutes with the use of a cane

17  to ambulate.  AR at 40.  The VE believed such an individual could not perform Plaintiff's past

18  relevant work.  *Id.*  In addition, the VE stated the worker could perform less than the full range of

19  sedentary work, and "the world of work as normally found is closed."  *Id.*

20       In addition, the VE was asked to consider a person with "marked limitations," which

21  Plaintiff's counsel defined as "an impairment which precludes the individual's ability to function

22  independently, appropriately in the designated area on a regular and sustained basis, i.e., eight . . .

23  hours a day, five days a week or an equivalent work schedule."  AR at 40-41.  The hypothetical

24  individual had marked limitations in the following abilities: to carry out short and simple or detailed

25  instructions; to maintain attention and concentration for extended periods, to perform activities

26  within a schedule, to maintain regular attendance and be punctual, to sustain a routine without

27  special supervision, and "to work in coordination or proximity with others without being unduly

28  distracted by them," and to complete a normal work day and week without interruptions.  *Id.* at 41.

The VE opined such a person would not be able to perform any work "as normally found" in the national economy. *Id.*

///

///

## C.   The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity from the alleged onset date of June 1, 2005.  AR at 13.  Second, the ALJ found Plaintiff has the following severe impairments: "obesity and degenerative arthritis of the right knee and ankle." *Id.*  These impairments did not meet or medically equal a listing. *Id.* at 14.

At the fourth step, to determine Plaintiff's residual functional capacity ("RFC"), the ALJ considered "the entire record."  AR at 15; *see also* AR at 15-17.  The ALJ determined Plaintiff had the RFC "to lift and carry 10 pounds occasionally and up to 10 pounds frequently, stand and walk for two hours each, sit for six hours, and occasionally climb, knee, crouch, and crawl." *Id.* at 15. Plaintiff was not capable of performing past relevant work. *Id.* at 17.  However, the ALJ concluded Plaintiff was able to performing jobs existing in significant numbers in the national economy, such as ampoule sealer, die loader, and weight tester. *Id.* at 18.  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.*

## DISCUSSION AND ANALYSIS

### A.   The ALJ did not have a duty to develop the record

Plaintiff argues that "the ALJ erred by failing to develop the record regarding [Plaintiff's] prior benefits." (Doc. 13 at 18).  According to the record, Plaintiff received benefits "based on limitations from his physical conditions" on May 26, 2001, which were continued on May 12, 2004.  AR at 54.  These benefits were terminated in March 2006 due to Plaintiff's incarceration. *Id.*  Plaintiff asserts the ALJ had a duty to determine whether the termination of benefits was warranted, and by not doing so the ALJ failed to develop a complete record and assure Plaintiff's interests were fully considered. (Doc. 13 at 18).  In addition, Plaintiff argues "the fact that [Plaintiff] has previously received benefits is relevant to the determination of whether [Plaintiff] is currently disabled." *Id.*, citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008).

11

1        1.  Presumption of disability

2        The termination of Plaintiff's benefits occurred for a non-medical reason: his incarceration.

3   The Regulations establish that a resident of a public institution, such as a prisoner, is ineligible for

4   benefits "for so long as such individual remains a resident of a public institution" and benefits may

5   be suspended.  20 C.F.R. § 416.1325.  After twelve continuous months of suspension, benefits may

6   be terminated.  *Id.* at § 416.1335.  If a recipient is incarcerated for less than twelve months, his

7   benefits resume and are "effective with the earliest day of the month in which a recipient is no longer

8   a resident of a public institution." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1308-09 (D. Kan. 2007),

9   quoting 20 C.F.R. § 416.1325(b).  On the other hand, the Regulations "provide for no such

10  reinstatement where a recipient's eligibility has been terminated after 12 consecutive months of

11  suspension." *Stubbs-Danielson*, 539 F.3d at 1172.  Consequently, the Ninth Circuit has indicated a

12  presumption of continuing disability is not applied when a claimant reapplies for benefits more than

13  one year after the termination of benefits for a non-medical reason.  *See id.*; *Warren v. Brown*, 804

14  F.2d 1120, 1121 (9th Cir. 1987).

15       In this case, Plaintiff's benefits were terminated in March 2006.  AR at 54.  For the

16  presumption of continuing disability to apply, Plaintiff must have filed his application for benefits by

17  March 2007.  However, Plaintiff did not file his applications for supplemental security income and

18  disability insurance benefits until September 4, 2007.  *Id.* at 149-58.  Accordingly, the presumption

19  of disability does not apply,[7] and Plaintiff was required submit any relevant medical evidence for the

20  ALJ's consideration.

21        2.  Conflicts, ambiguities, or insufficient evidence

22       The law is well-established in this Circuit that the ALJ has a duty "to fully and fairly develop

23  the record and to assure the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441,

24  443 (9th Cir. 1983).  However, the law imposes a duty on the ALJ to develop the record in limited

25

26       [7] Notably, though the presumption of disability is inapplicable, "[t]he existence of a prior established disability is
27  highly relevant when the nature of that disability appears to the very same cause of the alleged disability then under
    examination." *Mimms v. Heckler* 750 F.2d 180, 185 (2nd Cir. 1984) (finding the ALJ failed to properly develop the record
28  when "the ALJ failed to ask one question of the claimant about his prior disability and its relationship to the disability claim
    he was now pursuing").

1   circumstances.  20 C.F.R § 416.912(d)-(f) (recognizing a duty on the agency to develop medical

2   history, re-contact medical sources, and arrange a consultative examination if the evidence received

3   is inadequate for a disability determination).  The duty to develop the record is "triggered only when

4   there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

5   evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2201); *see* 20 C.F.R. § 416.912(e).

6   Here, there were no conflicts or ambiguities to be resolved, nor did the ALJ find the record was

7   insufficient to make a disability determination.  Consequently, the ALJ's duty to develop the record

8   was not triggered by the medical evidence.  *See Thomas v. Barnhart*, 278 F.3d 947, 978 (9th Cir.

9   2002) (duty not triggered when the ALJ did not conclude the medical report was inadequate to make

10  a disability determination); *Mayes*, 267 F.3d at 459-60.

11  **B.   The ALJ failed to set forth legally sufficient reasons to reject Plaintiff's testimony.**

12       Plaintiff asserts the ALJ failed to discredit his allegations of "excess symptoms" and "chronic

13  pain" under the standards set forth in Social Security Ruling 96-7p.[8]  In essence, Plaintiff asserts the

14  ALJ improperly rejected his testimony regarding his subjective complaints.  *See* SSR 96-7p, 1996

15  SSR LEXIS 4, at*1 ("The purpose of this Ruling is to clarify when the evaluation of symptoms,

16  including pain . . . requires a finding about the credibility of an individual's statements about pain or

17  other symptom(s) and its functional effects . . .").  Therefore, the Court will examine the credibility

18  determination set forth by the ALJ.

19       In determining credibility, an ALJ must determine first whether objective medical evidence

20  shows an underlying impairment "which could reasonably be expected to produce the pain or other

21  symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007), quoting *Bunnell*

22  *v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  Here, the ALJ found Plaintiff's "medically

23  determinable impairments could reasonably be expected to produce the alleged symptoms."  AR at

24  16.  However, the ALJ determined also that Plaintiff lacked credibility with his "statements

25

26

27       [8] Social Security Rulings are issued by the Commissioner to clarify regulations and policies.  Though they do not
     have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with
28   the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

concerning the intensity, persistence, and limiting effects" of his symptoms.  *Id.* Plaintiff asserts,

"The ALJ's credibility finding is not supported by clear and convincing evidence."  (Doc. 13 at 16).

### 1.  Findings of the ALJ

An adverse finding of credibility must be based on clear and convincing evidence where there

is no affirmative evidence of a claimant's malingering and "the record includes objective medical

evidence establishing that the claimant suffers from an impairment that could reasonably produce the

symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160

(9th Cir. 2008).  The ALJ may not discredit a claimant's testimony as to the severity of symptoms

only because it is unsupported by objective medical evidence. *See Bunnell*, 947 F.2d at 347-48.  In

addition, the ALJ "must identify what testimony is not credible and what evidence undermines the

claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834; *see also Dodrill v. Shalala*, 12 F.3d

915, 918 (9th Cir. 1993).  Credibility findings "must be sufficiently specific to allow a reviewing

court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not

arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir.

2004).  Here, the ALJ noted Plaintiff did not receive treatment consistent with chronic pain

syndrome; Plaintiff worked in during the period of alleged disability; the medical records did not

support the testimony; Plaintiff was not "entirely compliant" with medication; and Plaintiff

"cancelled or failed to show up for doctor appoints on a number of occasions."  AR at 16.

*Treatment received*

In assessing Plaintiff's credibility about his symptoms, the ALJ may consider "the type,

dosage, effectiveness, and side effects of any medication."  20 C.F.R. § 404.1529(c).  Further, the

treatment Plaintiff received, especially when conservative, is a legitimate consideration in a

credibility finding. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly

considered the physician's failure to prescribe, and the claimant's failure to request, medical

treatment commensurate with the "supposedly excruciating pain" alleged).  The Ninth Circuit has

"indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony

regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).

1    Here, the ALJ noted Plaintiff "has not received treatment consistent with a chronic pain

2    syndrome such as biofeedback, acupuncture, use of a TENS unit, physical therapy, or attendance at a

3    pain management clinic." AR at 16. Plaintiff argues, "There is no evidence in the record that such

4    treatment would be appropriate." (Doc. 13 at 15). Notably, the ALJ does not consider the five

5    surgeries Plaintiff had on his right ankle. Surgeries are seemingly neither routine nor conservative in

6    nature. *See Ritchotte v. Astrue*, 281 Fed. Appx. 757, 759 (9th Cir. 2008) (rejecting the ALJ's

7    conclusion that the claimant's treatment was too conservative where he had surgery and the

8    prognosis was guarded); *see also Walters v. Astrue*, 2010 U.S. Dist. LEXIS 55698, at *37-38 (E.D.

9    Cal. May 10, 2010) (contrary to the ALJ's conclusion that Plaintiff received conservative treatment,

10   "the record reflects that Plaintiff twice underwent surgery"). Therefore, the nature of treatment

11   Plaintiff received was not a clear and convincing reason for rejecting Plaintiff's testimony.

12              *Objective medical evidence*

13              As a general rule, "conflicts between a [claimant's] testimony of subjective complaints and

14   the objective medical evidence in the record" can constitute "specific and substantial reasons that

15   undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir.

16   1999). The Ninth Circuit stated, "While subjective pain testimony cannot be rejected on the sole

17   ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a

18   relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v.

19   Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barchart*, 400 F.3d 676, 681 (9th

20   Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain

21   testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96-7p, 1996 SSR

22   LEXIS 4, at *2-3 (the ALJ "must consider the entire case record, including the objective medical

23   evidence" in determining credibility, but statements "may not be disregarded solely because they are

24   not substantiated by objective medical evidence").

25              In citing to the medical evidence as part of a credibility determination, it is not sufficient for

26   the ALJ to make a general statement that the testimony is contradicted by the record. *Holohan v.

27   Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to

28   support an adverse credibility determination"). Rather, the ALJ "must state which pain testimony is

15

not credible and what evidence suggests the claimants are not credible." *Dodrill*, 12 F.3d at 918; *see also Holohan*, 246 F.3d at 1208 ("the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony").

Here, the ALJ did not base his credibility determination solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff.  Thus, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.  Specifically, the ALJ noted:

> The claimant told Dr. Kilgore that he had pain and swelling in his knee intermittently, but had not seen any physicians since he had moved to Texas about three months before that. [Citation].  Dr. Kilgore noted no effusions of the right knee, but flexion was 120 degrees with tenderness.  There was mild crepitus involving the left knee with flexion at 120 degrees as well.  He had popping, pain, and tenderness in the left knee.  He walked with a moderate limb with the right leg, and his gait was slow, but he had no cane, crutch, or wheelchair. [Citation].

AR at 16.  However, the ALJ did not address how these findings from October 2007 were inconsistent with Plaintiff's testimony.  Notably, the ALJ acknowledged that Plaintiff testified that he started using a cane in 2007 and stated he worked in 2007 for two to three weeks, but was unable to continue.  *Id.*  Because the ALJ did not identify the pain testimony that lacked credibility, he failed to meet his burden.  Consequently, the objective findings of Dr. Kilgore do not constitute a "clear and convincing" reason for rejecting Plaintiff's testimony.

### Noncompliance

The Ninth Circuit stated, "[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Therefore, noncompliance with a prescribed course of treatment is clear and convincing reason for finding a plaintiff's subjective complaints lack credibility.  *Id.*; *see also Bunnell v. Sullivan*, 947 F.2d at 346.

In this case the ALJ found, "The claimant cancelled or failed to show up for doctor appointments on a number of occasions.  There is evidence that the claimant has not been entirely compliant in taking prescribed medications."  AR at 16, citing AR at 264, 282, 293 (Exhibits 7F, p.4; 11F, p.2; 12F, p.1).  Plaintiff asserts, "These documents are insufficient to support the ALJ's findings that [Plaintiff] was not complaint with treatment and therefore must not suffer chronic pain from his impairments."  (Doc. 13 at 15-16).

16

1   The treatment notes cited by the ALJ indicate that Plaintiff failed to attend appointments at

2   Holy Cross Clinic on July 15 and July 19, 2009, and Plaintiff reported he had been out of medication

3   for two weeks at his appointment on July 24, 2009.  (AR at 264).  Plaintiff failed to attend a dentist

4   appointment on January 5, 2010.  AR at 293.  In addition, Plaintiff "walked out" of his appointment

5   for mental health treatment at Clinica Sierra Vista on February 1, 2010.  AR at 282.  Thus, the

6   treatment notes cited by the ALJ indicate Plaintiff failed to attend several appointments, though it is

7   not clear what significance may be derived from Plaintiff's failure to go to a dentist appointment.

8   On the other hand, the treatment notes do not indicate Plaintiff failed to take his medication.

9   Consequently, the Court cannot find that the ALJ's determination that Plaintiff was noncompliant

10  with his medication was supported by the medical evidence, and this was not a clear and convincing

11  reason for rejecting Plaintiff's pain testimony.

12      2.  Reliance on invalid reasons

13      When an ALJ sets forth reasons for an adverse credibility finding that are not supported by

14  the record or are legally insufficient, the Court must consider whether the reliance on invalid reasons

15  was a harmless error.  *See Batson*, 359 F.3d at 1195-97 (applying a harmless error standard where the

16  credibility finding was invalid).  The Ninth Circuit stated, "So long as there remains 'substantial

17  evidence supporting the ALJ's conclusion's on credibility' and the error 'does not negate the validity

18  of the ALJ's ultimate credibility conclusion,' such [error] is deemed harmless."  *Carmickle*, 533 F.3d

19  at 1162, quoting *Batson*, 359 F.3d at 1197.  The reasons set forth above were neither "clear and

20  convincing," nor supported by substantial evidence.

21      Though not mentioned by Plaintiff, another factor in the credibility decision was that Plaintiff

22  had attempted to work.  *See* AR at 16.  Defendant asserts,

23      The ALJ . . . properly considered that Plaintiff had worked during the same time he
        alleged he was disabled.  [Citation].  While the ALJ recognized that this work did not
24      rise to the level of substantial gainful activity . . . it was still relevant to assessing
        Plaintiff's credibility and showed that his claims of disabling pain and limitation were
25      not credible.

26  (Doc. 15 at 11) (internal citations omitted).  As an example, Defendant cites *Bray v. Astrue*, 554 F.3d

27  1210, 1227 (9th Cir. 2009), where the ALJ properly noted the claimant "recently worked as a

28  personal caregiver for two years, and has sought out other employment since then."  However, in this

1  case, Plaintiff had not recently engaged in substantial gainful activity, though he preferred to work

2  because he "made a lot of money." AR at 27.  Plaintiff testified that though he attempted to work in

3  2007 and 2008, he was unable to do so for more than a month, though he attempted to do so in 2007

4  and 2008. *Id.* The Ninth Circuit stated, " . . . a nine week unsuccessful work attempt is surely not a

5  clear and convincing reason for finding that a claimant is not credible regarding the severity of his

6  impairments." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1039 (9th Cir. 2007).  It follows then that

7  Plaintiff's unsuccessful attempts at work, which he testified lasted approximately two to three weeks

8  each, are not clear and convincing reasons for discrediting his symptom testimony.

9       Consequently, the reasons set forth by the ALJ were legally insufficient to support an adverse

10  credibility determination.  Further, as set forth below, the ALJ failed to reject the medical opinions in

11  the record, and his underlying decision is not supported by substantial evidence.  Therefore, the

12  ALJ's reliance on invalid reasons for rejecting Plaintiff's testimony was not a harmless error.

13  **C.  The ALJ did not properly evaluate the opinions of Plaintiff's physicians**.

14       Plaintiff asserts, "The ALJ improperly credited the opinion of the agency's physicians, Drs.

15  Kilgore and Collier, over the opinions of [Plaintiff's] treating physicians. . . ." (Doc. 13 at 19).

16  Plaintiff alleges the ALJ did not explain how Dr. Holtzman's opinion was inconsistent with the

17  medical evidence. *Id.* at 20.  Further, Plaintiff argues the opinions of the consultative physicians

18  were not supported by the record and were inconsistent with Plaintiff's symptoms.  *Id.*  On the other

19  hand, Defendant argues the ALJ properly assessed the medical opinions offered by the consultative

20  and treating physicians.  (Doc. 15 at 14-16).

21       In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating

22  physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-

23  examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821,

24  830 (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight in

25  disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on

26  the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*,

27  881 F.2d 747, 751 (9th Cir. 1989).  Also, an examining physician's opinion is given more weight

28  than the opinion of a non-examining physician.  20 C.F.R. § 404.1527(d)(2).

When the opinion of a treating physician is not contradicted, an ALJ must set forth "clear and convincing" reasons to reject the opinion. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). On the other hand, an ALJ may reject the contradicted opinion of a physician with "specific and legitimate" reasons, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). If there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the court when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). The opinion of a treating physician may be rejected whether or not the opinion is contradicted by another. *Magallanes*, 881 F.2d at 751. Here, because the opinions of Dr. Kilgore and Dr. Collier contradicted the opinions of Dr. Holtzman and Dr. Baca, the ALJ was required to set forth specific and legitimate reasons to reject the opinions.

### 1.  Opinion of Dr. Holtzman

The ALJ gave "little weight" to Dr. Holtzman's opinion, noting he completed a "fill-in-the-blanks, check-blocks form." AR at 16-17. The ALJ stated the opinion "lacked bases for the conclusions regarding limitations, such as signs, test results, whether the limitations were based on claimant's subjective complaints or objective findings or observation." *Id.* at 17. In addition, the ALJ found "some of the limitations and symptoms noted had no relationship to the medical evidence of record, and some of the checked items were not internally consistent." *Id.* As a final reason for rejecting the opinion, the ALJ stated "other substantial evidence . . . does not fully support the conclusions." *Id.*

Defendant asserts that the rejection due to the use of a form was proper: "A review of the check-box form itself shows that it is devoid of objective findings which would justify such extreme limitations." (Doc. 15 at 21). A treating physician's opinion that is "conclusory and brief" and lacks support of clinical findings may be rejected by an ALJ. *Magallanes*, 881 F.2d at 751. Consequently, the Ninth Circuit has established that an ALJ may discredit a treating physician's opinion that is in

1   the form of a checklist where the opinion is brief lacks supportive objective evidence.  *See Crane v.*

2   *Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) ("The ALJ permissibly rejected…check-off reports that

3   did not contain any explanation of the bases of their conclusion"); *Batson*, 359 F.3d at 1195

4   ("treating physicians' views carried only minimal evidentiary weight" when in the form of a

5   checklist and lacking supportive objective evidence).

6          In this case, however, Dr. Holtzman noted specifically that his findings were based upon a

7   physical exam and x-ray reports.  AR at 270.  In addition, Dr. Holtzman observed that Plaintiff had a

8   large ridged brace from foot supporting ankle to lower leg, knee" and "walks with crutches or cane."

9   *Id.*  Thus, this is not a case in which the treating physician provided "no description – either

10  objective or subjective – of medical findings, personal observations or test reports."  *See Burkhart v.*

11  *Bowen*, 856 F.2d 1335, 1339 (9th Cir. 1988).  Consequently, the use of the form and that the opinion

12  "lacked bases for the conclusion" were not proper reasons for giving the opinion of Dr. Holtzman

13  less weight.

14         Moreover, inconsistencies and the medical record were not proper reasons for giving less

15  weight to Dr. Holtzman's opinion, because the ALJ failed to describe the inconsistencies or state

16  how the record did not "fully support the conclusions."  *See* AR at 17.  To disregard a treating

17  physician's opinion, the ALJ must "set out a detailed and thorough summary of the facts and

18  conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Cotton v.*

19  *Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).  Here, the ALJ offered only his conclusion, and thus

20  failed to reject the opinion of Plaintiff's treating physician in a proper manner.

21         2.  Opinion of Dr. Baca

22         The ALJ addressed the opinion of Dr. Baca at step two of the sequential evaluation, where

23  the ALJ determined Plaintiff's "depression and anxiety disorder are slight impairments that have

24  only minimal, if any, effects on his ability to work."  AR at 14.  The ALJ rejected Dr. Baca's opinion

25  because there was "no longitudinal history of mental health treatment," and because Dr. Baca's

26  opinion was "contrary to the claimant's testimony."  *Id.*

27         The "[l]ength of the treatment relationship and the frequency of examination" are factors an

28  ALJ may consider in determining the weight to give to a medical opinion.  20 C.F.CR. § 404.1527

(d)(2)(ii); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  Here, the record contains the records

from Clinica Sierra Vista regarding Plaintiff's visits with Dr. Baca, and indicates Plaintiff saw Dr.

Baca six times between December 2009 and February 2010, in addition to treatment from another

physician at Clinica Sierra Vista.  *See* AR 281-291.  The ALJ did not explain how the duration of the

treatment or the frequency of examinations impacted his opinion.  Further, the ALJ did not explain

how the opinion of Dr. Baca conflicted with the testimony provided by Plaintiff.  As stated above,

the ALJ must set out a summary of conflicting evidence, and state his interpretation thereof.  *See*

*Cotton*, 799 F.2d at 1408.  Because the ALJ summarily dismissed Dr. Baca's opinion at step two of

his inquiry, he failed to meet this burden.

**D.   Remand is appropriate in this matter.**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or

to order immediate payment of benefits is within the discretion of the district court.  *Harman v.*

*Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an

administrative agency determination, the proper course is to remand to the agency for additional

investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004), citing *INS v.*

*Ventura*, 537 U.S. 12, 16 (2002).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
> (2) there are no outstanding issues that must be resolved before a determination of
> disability can be made, and (3) it is clear from the record that the ALJ would be required
> to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed

where no useful purpose would be served by further proceedings, or where the record has been fully

developed.  *Varney v. Sec'y of Heath & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to properly reject Plaintiff's

subjective complaints or the physicians' opinions.  In addition to the issues addressed above,

Plaintiff asserts the ALJ failed to credit his use of a cane, or to properly consider Plaintiff's

depression, anxiety, insomnia, and obesity.  These issues are intertwined with the opinions of

physicians.  For example, to find Plaintiff requires the use of a cane, "there must *be medical*

*documentation* establishing the need for a hand-held assistive device to aid in walking or standing,

21

and describing the circumstances for which it is needed." SSR 96-9p, 1996 SSR LEXIS 6, at *19 (emphasis added). Notably, Plaintiff's cane was prescribed by a physician, and Dr. Holtzman opined Plaintiff's use of a cane was "medically necessary" (AR at 270), but the ALJ rejected this opinion. Consequently, the Court declines to address the ALJ's assessments of Plaintiff's physical and mental limitations, and the matter should be remanded for the ALJ to evaluate Plaintiff's credibility and medical opinions, because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if the evidence were credited.

## **CONCLUSION**

For all these reasons, the Court concludes the ALJ erred in rejecting Plaintiff's testimony. In addition, the ALJ failed to set forth specific and legitimate reasons for rejecting the opinions of Dr. Holtzman and Dr. Baca.

Accordingly, the Court **HEREBY REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Larry Nickerson and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **July 26, 2011**                                        **/s/ Jennifer L. Thurston**
                                                                          UNITED STATES MAGISTRATE JUDGE